IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J.Y., a Minor, by his Parents | ) | |
| E.Y. and G.Y., as his next friend; | ) | |
| and E.Y. and G.Y., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12cv347-SRW |
| | ) | |
| DOTHAN CITY BOARD OF | ) | |
| EDUCATION; TIM WILDER, | ) | |
| SUPERINTENDENT OF DCBOE, in | ) | |
| His Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

This action is presently before the court on defendants' motion for partial summary judgment (Doc. # 46). Defendants contend that they are entitled to summary judgment on claims arising from events that occurred in JY's fourth grade school year due to plaintiffs' failure to exhaust administrative remedies. They also seek summary judgment on GY's claims of retaliation due to the allegedly preclusive effect of the judgment of the Houston County Circuit Court on GY's challenge to the non-renewal of his contract in that court. Upon consideration of the motion for partial summary judgment, the court concludes that it is due to be granted.

**Summary Judgment Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. den.*, 133 S.Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011); Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" Josendis, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012). However, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013)(citation omitted).

### JY's Fourth Grade Year

In their amended complaint (Doc. # 38), plaintiffs allege, *inter alia*, that:

> 18. Parents of J.Y. requested services for their son who was diagnosed with ADAD during the 2007-2008 school year and was told by the principal of his elementary school and the present special education coordinator that because he was making passing grades, he did not qualify for services, even under § 504. The Parents were not told that they had any rights as the parents of a student with disabilities. The Parents believing that if he did not qualify for § 504 services he certainly would not qualify for Special Education under IDEA, a more stringent statute for eligibility.
>
> 19. After being told that their son did not qualify for services, the parents retained a private tutor and began working with J.Y. for hours at night to make sure that he passed.
>
> 20. The System intentionally and maliciously discriminated against J.Y. when they refused to evaluate his eligibility for § 504 and IDEA when they had reason to suspect that J.Y. may be a child with a disability and in need of services.
>
> 21. The System's refusal to evaluate constituted a continual discrimination against J.Y.
>
> \* \* \* \* \*
>
> 68. G.Y. and E.Y. have, for the past 5 years, requested services for their disabled son, J.Y., from the Dothan City Board of Education, and, without evaluation or testing, were continuously told that services were not available for J.Y. or that J.Y. did not qualify for services.

(Doc. # 38, pp. 6-7, 14)(errors in original).

JY was in the fourth grade during the 2007-2008 school year. (GY depo., p. 72). The Ys did not file a due process complaint during that school year. (Id., p. 110). In a motion for partial summary judgment filed on June 3, 2013, defendants argue that they are, therefore,

entitled to summary judgment as to any claims relating to JY's fourth grade year. (Doc. # 46). Plaintiffs respond that, although they are unaware of any such claims in their complaint, any claims in their complaint arising from actions taken in 2007-2008 that are subject to the IDEA's exhaustion requirement "were inadvertent and are due to be dismissed." (Doc. # 58, p. 2). Accordingly, to the extent that plaintiffs allege claims subject to the IDEA's exhaustion requirement which arise from events that occurred during JY's fourth grade year (2007-08), defendants' motion for partial summary judgment is due to be granted.[1]

### GY's Retaliation Claims

GY worked for the Dothan County Board of Education as a principal, pursuant to a three-year contract. In March 2012, defendant Wilder recommended to the Board that it decline to renew GY's principal contract upon its expiration. The Board approved Wilder's recommendation. (Defendants' Exhibit 19, pp. 391-94). Thereafter, GY exercised his right under the Teacher Accountability Act to "request a nonjury, expedited evidentiary hearing" in the Circuit Court of Houston County on the sole issue of whether Wilder's

---

[1] The parties argue about the admissibility of evidence from JY's fourth grade year as to other claims that are not the subject of defendants' motion for partial summary judgment. The court need not reach the admissibility issue, as the evidence is not relevant to the court's disposition of the present motion. Plaintiffs concede that "[a]ll claims as they apply to J.Y. are subject to the exhaustion requirements of the IDEA" and that "[a]ll claims for G.Y. and E.Y. related to the FAPE issues and discrimination due to the failure to provide FAPE are subject to the IDEA exhaustion." (Doc. # 75, ¶ 1; see also id. at ¶ 7). Plaintiff GY has also clarified that he "does not assert any claims in Counts II thru V of the Amended Complaint that are not subject to the IDEA's exhaustion requirement AND are based on events that occurred during J.Y.'s fourth grade year." (Doc. # 77, ¶ 1).

4

recommendation or the Board's approval of that recommendation was "based upon personal or political reasons of the chief executive officer ... or the employing board[.]" Ala. Code, § 16-24B-3(e)(2); see Doc. # 29-1. On May 16, 2012, after conducting the evidentiary hearing, retired Circuit Judge Denny L. Holloway, "Acting as Mediator," entered a final order finding against GY and in favor of defendants, concluding that GY had "failed to meet his burden as required by the statute to show by a preponderance of the evidence that Superintendent Wilder had personal reasons for his recommendation subsequently approved by the Dothan City Board to non-renew the expired contract of Plaintiff[.]" (Doc. # 29-1; id. at p. 6).[2] Judge Holloway's decision was appealed to the Alabama Court of Civil Appeals which, by judgment entered on September 4, 2012, dismissed the appeal on the appellant's motion. (Doc. # 29-1, p. 7).[3]

In the amended complaint before this court, GY alleges that Wilder and the Board decided not to renew his contract in retaliation for his protected activity in advocating on his

---

[2] The statute provides that "[i]f the circuit court determines that it is not able to complete the expedited evidentiary hearing within the 45-day period, the court shall refer the parties to a mediator to conduct the expedited evidentiary hearing," that "[t]he written decision of the mediator shall be binding on the parties[,]" and that such mediator's decision is appealable to the Alabama Court of Civil Appeals. Ala. Code, § 16-24B-3(e)(3), (g); see also Doc. # 29-1, Final Order, pp. 1-2 ("'*After consulting with the parties and by agreement of the parties, Circuit Judge Denny Holloway (retired) is designated to hear the above case pursuant to Code of Alabama 16-24B-3.*'")(quoting Circuit Judge Mendheim's referral order; italics in original).

[3] Defendants argue that GY appealed the decision. (Doc. # 46, p. 18). While this is likely, it is not a fact in evidence. Defendants further argue that "[t]he Court of Civil Appeals dismissed the appeal because it was filed untimely." Id. However, no reason for dismissal is indicated in the appellate court's certificate of judgment except that it was "on motion of appellant." (Doc. # 29-1, p. 7).

disabled son's behalf, in violation of GY's rights under the Rehabilitation Act, the Americans with Disabilities Act, the IDEA, and the U.S. Constitution. (Amended Complaint, Doc. # 38).[4] Defendants contend that GY's retaliation claims are barred by *res judicata* as a result of the May 2012 judgment rendered against GY in the state circuit court. (Doc. # 46, pp. 18-22).[5] In response, GY maintains that the "merits of the present case have never been decided by a court of competent jurisdiction" because the sole issue before the state circuit court was "whether the '[s]uperintendent's recommendation to non-renew the contract was impermissibly based on personal or political reasons or the recommendation was approved based on political or personal reasons of the employing board.'" (Doc. # 58, p. 3)(quoting Doc. # 29-1, Final Order in Houston County Circuit Court Case No. CV-12-121.00). Plaintiff contends that, "[a]lthough the state court was presented with evidence of retaliation he could not and did not decide the issue of retaliation. He determined **only** that the Board nor the Superintendent acted personally or politically." (Doc. # 58, p. 5)(emphasis in

---

[4] Defendants observe that "[t]he complaint as last amended does not appear to allege any cause of action by or as to EY." (Doc. # 46, p. 6; see also id., at n. 3). In their response to the motion, plaintiffs do not contend otherwise. (Doc. # 58). Careful review of the amended complaint reveals that, although EY alleges that she engaged in protected activity, she does not allege that defendants retaliated against *her* for *her* protected activity by failing to renew GY's contract or in any other manner. Thus, the only retaliation claims before the court are those asserted by GY. While the court has made this determination based on the allegations of the amended complaint, its review of plaintiffs' brief in support of their motion for partial summary judgment reaffirms that conclusion. (See Doc. # 42, Plaintiffs' brief in support of plaintiffs' motion for partial summary judgment, at pp. 53-59, 63-65)(making clear that the retaliation claims before the court are lodged by GY only, on the basis of GY's protected activity).

[5] Defendants raised the affirmative defense of preclusion by amendment to their answer. (Doc. # 20; see also Doc. # 39).

original).

In determining the preclusive effect of a state court judgment, this court applies "the rendering state's law of preclusion." Community State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011), *cert. denied,* 133 S.Ct. 101 (2012); see also Green v. Jefferson County Commission, 563 F.3d 1243, 1252 (11th Cir.), *cert. denied*, 558 U.S. 874 (2009)(same).[6] The *res judicata* doctrine encompasses both claim preclusion and issue preclusion (also known as collateral estoppel). Whisman v. Alabama Power Co., 512 So.2d 78, 81 (1987); see also Lee L. Saad Constr. Co., Inc. v. DPF Architects, P.C., 851 So.2d 507, 516 (Ala. 2002)("'The doctrine of *res judicata*, while actually embodying two basic concepts, usually refers to what commentators label "claim preclusion," while collateral estoppel ... refers to "issue preclusion," which is a subset of the broader *res judicata* doctrine.'")(citation omitted). Under Alabama law, collateral estoppel bars re-litigation of an issue that is identical to one that was actually litigated in a previous action between the same parties, if the resolution of the issue was necessary to the prior judgment. Brown v. One Beacon Ins.

---

[6] Defendants direct the court to inapplicable federal preclusion law. See Doc. # 46, p. 19 (citing Draper v. Atlanta Independent School System, 377 Fed. Appx. 937 (11th Cir. 2010), which affirmed the district court's dismissal of plaintiff's lawsuit due to the preclusive effect of his previous *federal* action); Doc. # 65 at pp. 9-10 (same). GY relies on a former Fifth Circuit case applying federal preclusion law in a TILA case to determine the effect of a Mississippi judgment. (Doc. # 58, pp. 4-5)(citing White v. World Finance of Meridian, 653 F.2d 147 (5th Cir. Aug. 7, 1981)). However, other cases – including Migra v. Warren City School District Board of Education, 465 U.S. 75 (1984), Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982), and Eleventh Circuit decisions rendered in the intervening three decades – make clear that this court must resolve the preclusion issue before it by resort to Alabama law. GY does not contend that the proceedings in the Houston County circuit court did not comport with the minimum procedural requirements of the due process clause of the Fourteenth Amendment. (See Doc. # 58, Doc. # 29).

Co., Inc., 317 Fed. Appx. 915, 917 (11th Cir.), *cert. denied*, 558 U.S. 822 (2009)(citing Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978)). "The doctrine of collateral estoppel, or issue preclusion, does not require identity of the causes of action involved." Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala. 1990).

Accordingly, the court must decide based on its review of the excerpts of the state court record filed in this action whether GY is precluded from relitigating the factual issue of whether Wilder recommended, or the Board decided, not to renew GY's contract because of GY's conduct in advocating for the rights of his disabled son by prosecuting the due process hearing. As set forth above, GY contends that preclusion is not appropriate because the issue of retaliation now before this court is not the same as the issue of personal or political motivation considered by the state court. However, GY's description of the "issue" in the state court action is unduly limiting. The Alabama Supreme Court has observed, in the context of collateral estoppel, that an "issue" is a "'single, certain and material point arising out of the allegations and contentions of the parties'" and that "[a]ny contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue ... is subsumed in that issue and precluded by the prior judgment's collateral estoppel effect." Christian Television Corp. of Alabama v. RCH Broadcasting, Inc., 554 So.2d 989 (Ala. 1989)(quoting *Moore's Federal Practice*, § 0.443[2] at 760-61 (2d ed. 1978)). Thus, the court looks to the Teacher Accountability Act, Judge Holloway's final order, and the "allegations and contentions of the parties" to determine the "single, certain, and material

8

point" litigated and decided in the Houston County circuit court action.

The issue decided by Judge Holloway – as set forth in his decision – was "whether the contract principal [GY] has shown by a preponderance of the evidence in this case that the Superintendent's recommendation to non-renew was impermissibly based upon a personal or political reason or that the recommendation was approved by the Board based upon personal or political reasons of the employing Board, Dothan City Board of Education." (Doc. # 29-1, p. 4). Section 16-24B-3(e)(2)(a) of the Alabama Code provides that a contract principal "may request a nonjury, expedited evidentiary hearing to demonstrate that the chief executive officer's or supervisor's recommendation to nonrenew the contract was impermissibly based upon a personal or political reason, or the recommendation was approved based upon personal or political reasons of the chief executive officer, supervisor, or the employing board, which shall be the sole issues at any such hearing." At the expedited hearing in the Houston County circuit court, GY contended that Wilder recommended and the Board decided not to renew GY's contract in a "three-prong [act of] retaliation" related to JY's due process hearing – *i.e.,* retaliation for suing the Board, for winning the case, and for presenting the Board with a large attorney fee bill. (Doc. # 53-5, GY's opening statement to Judge Holloway). Plaintiff disagreed with defendants' contention that retaliation was "not an issue[,]" arguing that retaliation is "a personal reason." (Id., p. 2). Bobbie Crook, the attorney who represented plaintiffs at the due process hearing, was the first witness GY called to the stand in the two-day evidentiary hearing before Judge Holloway. (Doc. # 53-4).

Crook testified about the ten-day due process hearing, the hearing officer's decision, and the letter she had sent to defendants' attorney claiming attorney fees in the amount of $104, 688.25 and an additional amount for expenses the Board owed to the parents, for a total demand of $111,483.25. (Doc. # 59-13). GY testified about the due process hearing and his reasons for pursuing it despite concerns expressed by others of possible retaliation; he also testified about Wilder's comments in a principals' meeting that Wilder did not want negative statements about the schools "out in the community and the ballpark and people" and that, if the principals heard of any such statements, they should report it to him. (Doc. # 46-4). GY further testified that he did not know that Wilder was displeased with his handling of discipline at the school (id.) – the reason for non-renewal indicated in Wilder's recommendation to the board (see Doc. # 29-1, Judge Holloway's order, at pp. 2-3) – until late March of 2012, when GY met with Wilder about GY's performance evaluation. (Doc. # 46-4).

In his decision, Judge Holloway described plaintiff's litigation of the issue as follows:

> Plaintiff [GY] has made no effort to establish or prove "political reasons" as reasons for his non-renewal. All evidence was directed at "personal reasons" for non-renewal and centered primarily at Superintendent Wilder.
>
> [GY] contended at the hearing that Superintendent Wilder's recommendation to non-renew his contract was based on personal reasons; specifically, a personal bias against him because he and his wife made negative statements about the Dothan City schools when they filed a special education due process complaint against the school system on behalf of their son. [GY] sought to establish that Superintendent Wilder or the Board had a personal motivation, a personal bias against him, because of the negative statements he and his wife made during the due process hearing. [GY] sought to establish

10

> also that Superintendent Wilder's stated reasons were false and therefore, by inference, that the reason for the recommendation and the vote approving the recommendation was personal bias or animosity.

(Doc. # 19-1, p. 4). In reaching his conclusion that GY had failed to establish that defendants were motivated by personal or political reasons, Judge Holloway cited evidence that neither Wilder nor any of the Board members testified or were present at the due process hearing or "participated in the hearing process." (Id., p. 5). While Judge Holloway framed his conclusion in terms of GY's failure to establish "personal" or "political" reasons – the issue specified by the Teacher Accountability Act – nothing in his decision suggests that he decided that animus toward GY arising from GY's activity in advocating for his son by prosecuting a special education due process complaint against the Board does not constitute a "personal" reason within the meaning of § 16-24B-3(e)(2)(a).[7] Rather, read as a whole, Judge Holloway's final order conveys his conclusion that GY failed to prove that Wilder's recommendation or the Board's decision were a result of retaliatory animus toward GY, the sole "personal" reason identified by GY at the hearing as the prohibited basis for the non-

---

[7] In the context of a predecessor tenure statute that – like the statute governing GY's claim in the circuit court – prohibited cancellation of a contract for personal or political reasons, the Alabama Supreme Court observed that "the word 'personal' ... denotes a personal bias, prejudice, or antipathy" on the part of a Board member toward the teacher. Marshall County Board of Education v. State Tenure Commission, 280 So.2d 130, 134 (Ala. 1973). Judge Holloway noted this definition in his decision. (Doc. # 29-1 at p. 5). In an earlier case also decided under a predecessor statute, the Alabama Supreme Court characterized as "personal reasons" a superintendent's alleged "personal dislike for [the teacher] due to her activity in the union" and, because the teacher was prevented at the hearing from presenting evidence of this motivation, reversed the decision below upholding cancellation of the teacher's contract. State ex rel. Steele v. Board of Education of Fairfield, 40 So.2d 689 (Ala. 1949), *overruled on other grounds*, Ex parte Jackson, 625 So.2d 425 (Ala. 1992).

11

renewal. Thus, the factual issue GY seeks to litigate here – whether the non-renewal of his contract was motivated by his advocacy on behalf of his disabled son[8] – is the same issue that he litigated before Judge Holloway.  Judge Holloway's decision that plaintiff failed to show that the non-renewal was based on personal or political reasons necessarily rested on his conclusion that GY did not establish that either Wilder's recommendation or the Board's decision were motivated by GY's conduct in advocating for his son through the due process hearing.  Because GY and the defendants actually litigated this issue before the state court, and resolution of the issue was necessary to the state court judgment, GY is barred – as a matter of issue preclusion – from re-litigating it here.[9]  To demonstrate an entitlement to

---

[8] See Amended Complaint, Doc. # 38, at ¶¶ 27, 34, 59, 61,  71-76 (initiation and prosecution of the due process hearing, the hearing officer's order ruling in plaintiffs' favor, and presentation of the bill in the amount of $111,483.25 alleged as the basis for alleged retaliation by Wilder and the Board in non-renewing GY's contract).

[9] GY does not dispute that he and the defendants were parties to the Houston County Circuit Court action.  (See Doc. # 58).  He concedes that the Houston County Circuit Court had jurisdiction to render a decision on GY's statutory claim that the non-renewal of his contract was based on personal or political reasons.  (Id.). Judge Holloway – serving as the designated "mediator" in the circuit court action – decided the merits of the § 16-24B-3(2)(a) claim on May 16, 2012.  (Doc. # 29-1). The appeal of that judgment was dismissed by the Alabama Court of Civil Appeals on September 4, 2012 (Doc. # 53-6), well after the time to appeal from Judge Holloway's decision had run; therefore, "the dismissal of the appeal was effectively with prejudice[,]" making Judge Holloway's decision a final judgment on the merits. Chapman Nursing Home, Inc. v. McDonald, 985 So.2d 914, 920 (Ala. 2007); id. (stating, in analyzing the preclusive effect of a final administrative decision, that "[b]ecause the hearing officer has statutory jurisdiction to render binding decisions on unemployment-compensation-benefit claims, the decision that McDonald was entitled to unemployment benefits was rendered by a court of competent jurisdiction"); Ala. Code § 16-24B-5 (allowing 14 days to appeal from the final written decision of the circuit court or mediator and providing that "[t]he final written decision of a judge or mediator which is not appealed, or is affirmed on appeal, shall have the force and effect of a final judgment"); Ala. Code, § 16-24B-3(g)(decision of circuit court or mediator "shall be final and exclusively appealable to the Alabama Court of Civil Appeals").

relief on his federal retaliation claims before this court, GY would have to prove that Wilder or the Board discriminated against him by declining to renew his contract because he opposed disability discrimination. 42 U.S.C. § 12203(a); 29 U.S.C. §§ 791(g), 793(d), 794(d); see Hesling v. Seidenberger, 286 Fed. Appx. 773, 774 n. 2 (3rd Cir. 2008)(affirming summary judgment on parent's IDEA retaliation claim – assuming standing and no procedural defects – for failure to show "a causal connection between the exercise of that protected activity and the alleged adverse action").[10] Due to the state court's judgment and

---

[10] The amended complaint fails to state valid § 1983 claims pursuant to the U.S. Constitution arising from the allegedly retaliatory recommendation and non-renewal of GY's contract. The constitutional rights alleged as the basis for plaintiffs' § 1983 claim are due process (both procedural and substantive) and equal protection. (Doc. # 38, Count V). To the extent that GY's equal protection claim rests on retaliatory non-renewal of his contract, he states no cognizable claim. Rollins v. Alabama Community College System, 814 F.Supp.2d 1250, 1298 n. 26 (M.D. Ala. 2011)(citing Watkins v. Bowden, 105 F.3d 1344 (11th Cir. 1997)); Long v. Russell County Commission, 2010 WL 5391603, * 14 (M.D. Ala. Dec. 27, 2010)("'A pure or generic retaliation claim ... simply does not implicate the Equal Protection Clause.'")(quoting Watkins, 105 F.3d at 1355); Wilborn v. Southern Union State Community College, 720 F.Supp.2d 1274, 1308 (M.D. Ala. 2010)("The court also notes that retaliatory action is not prohibited by the Equal Protection Clause.")(citing Watkins, 105 F.3d at 1354 and Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995)). GY's allegations of retaliatory non-renewal also fail to state a substantive due process claim. McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995)("Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection."). GY has not alleged that the state provided no adequate remedy for the allegedly retaliatory recommendation and non-renewal of GY's contract and, thus, the amended complaint fails to state a procedural due process claim arising from the non-renewal. Id. at 1562 ("[P]rocedural due process violations do not become complete 'unless and until the state refuses to provide due process.'")(citation omitted); cf. Miccosukee Tribe of Indians of Florida v. U.S., 716 F.3d 535 (11th Cir. 2013)(affirming dismissal, stating, "Count II contains no allegation of the process the Tribe claims was due, much less that it was inadequate."); Tinney v. Shores, 77 F.3d 378, 382 (11th Cir. 1996)("[T]he Tinneys have failed to state a valid procedural due process claim because they have not alleged that Alabama law provided them with an inadequate post-deprivation remedy."). Plaintiff argues in a brief in support of his own motion for partial summary judgment (but not in response to the present motion) that Wilder and the Board discriminated against him "for exercising his right to Free Speech, under the 1st Amendment of the United States Constitution." (Doc. # 42, p. 67). However, no such claim is

13

Alabama's issue preclusion law, GY may not do so. Thus, defendants are entitled to summary judgment on GY's claims, set forth in Counts II through V of the amended complaint, that defendants retaliated against him by recommending and deciding not to renew his contract.

## CONCLUSION

For the foregoing reasons, it is ORDERED that defendants' motion for partial summary judgment (Doc. # 46) is GRANTED.

DONE, this 8th day of November, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

alleged in the amended complaint (see Doc. # 38); plaintiff may not amend his complaint by way of argument in a brief on summary judgment. Tie Qian v. Secretary, Dept. of Veterans Affairs, 432 Fed. Appx. 808, 809-10 (11th Cir. 2011)(citing Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004)). Even if GY had pursued a § 1983 retaliation claim under the First Amendment and could demonstrate that his expression on behalf of his son was on a matter of public concern, such a claim also requires proof that Wilder and/or the Board acted because of GY's protected expression. See Leslie v. Hancock County Board of Education, 720 F.3d 1338, 1346 (11th Cir. 2013)(describing First Amendment retaliation claim in the public employment context). Within his § 1983 claim (Count V) only, GY alleges that his employment was terminated "in retaliation of him advocating for the rights of his son *and other disabled students* in violation of the IDEA, § 504 and the ADA." (Doc. # 38, ¶ 80)(emphasis added). However, the amended complaint does not allege any acts of advocacy by GY on behalf of any student other than his son. (See Doc. # 38; id. at ¶¶ 6, 22, 26, 27, 69-71). Thus, the amended complaint states no claim of retaliation resting on GY's advocacy on behalf of other students.