IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J.Y., a Minor, by his Parents | ) | |
| E.Y. and G.Y., as his next friend; | ) | |
| and E.Y. and G.Y., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12cv347-SRW |
| | ) | |
| DOTHAN CITY BOARD OF | ) | |
| EDUCATION; and TIM WILDER, | ) | |
| SUPERINTENDENT OF DCBOE, | ) | |
| His Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

In this action, the Dothan City Board of Education ("Board") challenges the decision rendered in state administrative proceedings on plaintiffs' due process complaints alleging violations of the Individuals with Disabilities Act ("IDEA"). "The IDEA ... represents 'an ambitious federal effort to promote the education of handicapped children.'" M.M. ex rel. C.M. v. School Board of Miami-Dade County, Fla., 437 F.3d 1085, 1094 (11th Cir. 2006)(quoting Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 179 (1982)). "The IDEA achieves its goals by guaranteeing students with disabilities a Free and Appropriate Public Education ('FAPE')[,]" as defined in 20 U.S.C. § 1401(9), and which is "'based on the child's unique needs[.]'" M.M., 437 F.3d at 1095 (citations omitted). The IDEA does so by establishing, as a condition of federal funding, certain obligations on the part of state and local education agencies to children with disabilities and their parents. 20

U.S.C. § 1411, *et seq.*  The Act also provides procedural safeguards for such children and parents, including the right to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education of such child" – and, if the complaint is not resolved by agreement, to have the complaint considered at an impartial due process hearing.  20 U.S.C. § 1415.  "Any party aggrieved by the findings and decision" of the state education agency after such a hearing on the complaint may bring a civil action in either a state court of competent jurisdiction or a federal district court.  Id., § 1415(i).

The Ys pursued two complaints against the Board to a consolidated due process hearing before an Alabama State Department of Education hearing officer; the hearing officer rendered a decision finding in the Ys' favor on three of the four specific issues presented in their complaints.  (Doc. # 36-1).  The Board brings a claim before this court challenging the due process hearing officer's decision and seeking judgment in its favor overturning that decision as contrary to law and the evidence.  (Counterclaim, Doc. # 4 at pp. 17-35).  The Board now moves for a "Judgment on the Record, or a Judgment with Findings and Conclusions based on the Record, pursuant to Rule 52, Fed. R. Civ. P." or, in the alternative, for summary judgment on its IDEA claim. (Doc. # 43, p. 1).  In a cross-motion for summary judgment (Doc. # 41), plaintiffs seek entry of judgment in their favor enforcing the due process hearing officer's decision.[1,2]  Upon consideration of the motions,

---

[1]  The hearing officer found against plaintiffs on an IDEA retaliation issue presented in their due process complaint but otherwise found in their favor. While plaintiffs assert an IDEA claim in

the parties' arguments, and the administrative record, the court concludes that the cross-motions are each due to be granted in part and denied in part.

### Standard of Review for IDEA Claim

The IDEA authorizes an "aggrieved" party to bring an action in federal court challenging the ALJ's final decision. 20 U.S.C. § 1415(i)(2)(A). Although the federal action is an independent civil action and not merely a review of a state administrative decision, the Supreme Court has determined that federal courts

---

this matter (Amended Complaint, Doc. # 38, Count I), they do not challenge the hearing officer's decision but, instead, seek to enforce it. (See id., ¶¶ 1-57). While their amended complaint alleges no error whatsoever on the part of the hearing officer, plaintiffs argue in their brief in support of their motion for summary judgment – within the section devoted to the ADA claim – that the hearing officer erred by "refusing to go beyond the two (2) year statute of limitations when deciding the IDEA issue" because plaintiffs did not understand until they received Dr. Passler's evaluation in 2011 that the school was wrong in denying JY services in his fourth grade year. (Doc. # 42, p. 55). Thus, plaintiffs now contend that they are entitled to more compensatory education than ordered by the hearing officer under the IDEA, as well as under section 504 and the ADA. (Id.). However, plaintiffs may not amend their complaint by way of argument in their summary judgment brief; this belated challenge to the decision is not properly before the court. Because plaintiffs' amended complaint includes no claim of error in the hearing decision, plaintiffs sole IDEA claim is their independent claim for attorney's fees and expenses pursuant to 20 U.S.C. § 1415(i)(3)(B).  See Robert K. and Karen K. o/b/o T.K. v. Cobb County School District, 279 F. App'x. 798, 800 (11th Cir. 2008)("20 U.S.C. § 1415(i)(3)(A) confers jurisdiction over IDEA actions to district courts, and § 1415(i)(3)(B)(i)(I) creates a cause of action for parents to recover attorneys' fees."); Georgia State Department of Education v. Derrick C., 314 F.3d 545, 550 (11th Cir. 2002)(an IDEA claim for attorneys' fees is "an independent claim which the district court, not the administrative agency is to decide" and is distinct from an IDEA substantive appeal)(citing Zipperer v. School Board of Seminole County, 111 F.3d 847, 851-52 (11th Cir. 1997)). To the extent that plaintiffs seek compensatory and punitive damages for the Board's violation of the IDEA (Doc. # 38, ¶ 55), such relief is not available under the statute.  Ortega v. Bibb County School District, 397 F.3d 1321 (11th Cir. 2005).

    [2] The parties initially filed the transcript of the testimony at the due process hearing, but only some of the exhibits considered by the hearing officer.  Additionally, those exhibits they did file in this court were not designated as they were in the administrative proceeding and the hearing officer's decision.  Thus, the court ordered the Board to file all of the exhibits accepted into evidence by the hearing officer and to identify them by the exhibit numbers used in the due process hearing (Doc. # 83).  The Board has done so (see Doc. # 87), and the Ys concur that the record before the court, as now supplemented by the Board, includes all of the documents admitted at the due process hearing (Doc. # 88).

> must still give "due weight" to the ALJ's determinations. See Rowley, 458
> U.S. at 206, 102 S.Ct. at 3051; Loren F. [v. Atlanta Independent School
> System, 349 F.3d 1309, 1314 (11th Cir. 2003)]. "To that end, administrative
> factfindings are considered to be *prima facie* correct, and if a reviewing court
> fails to adhere to them, it is obliged to explain why." Loren F., 349 F.3d at
> 1314 n. 5 (internal quotation marks and citations omitted).

M.M., 437 F.3d at 1097.  The court may reject administrative findings of fact that are not

supported by the evidence.  Doe v. Ala. State Dept. of Education, 915 F.2d 651, 657 n. 3

(11th Cir. 1990).  A district court may accept additional evidence, but is not required to do

so; in exercising its discretion, the court "'must be careful not to allow such evidence to

change the character of the hearing from one of review to a trial de novo.'" G.J. v. Muscogee

County School District, 668 F.3d 1258, 1268 (11th Cir. 2012)(citation omitted).[3]  The party

challenging the agency decision – the Board, in this case – bears the burden of establishing

that it is erroneous.  Ms. H. v. Montgomery County Board of Education, 2011 WL 666033,

*1 (M.D. Ala. Feb. 14, 2011); see also Ridley School Dist. v. M.R., 680 F.3d 260, 270 (3rd

Cir. 2012)("We now join our sister circuits in holding that the party challenging the

administrative decision bears the burden of persuasion before the district court as to each

claim challenged."); Marshall Joint School Dist. No. 2 v. C.D. ex rel. Brian D., 616 F.3d 632,

636 (7th Cir. 2010)("Under the [IDEA], the party challenging the outcome of the

---

[3] In its counterclaim, the Board asks that the court "[a]llow and consider additional evidence as allowed and called for in the statute[.]"  (Doc. # 4, p. 32, ¶ c).  However, except for its required notice of intent to file a civil action, the documents the Board submits in support of its motion for judgment on the record include only those before the hearing officer. (See Doc. # 43, p. 4, ¶ 4). In their response to the Board's motion, plaintiffs cite no evidence that was not before the hearing officer.  (See Doc. # 57).  Thus, in resolving the IDEA claim, this court has considered no evidence beyond that presented during the administrative proceedings.

administrative hearing bears the burden of persuasion in the district court."); District of Columbia v. Doe, 611 F.3d 888, 897 (C.A.D.C. 2010)("[T]he IDEA hearing officer's decision warrants 'less deference than is conventional' in administrative proceedings but the [challenging party] 'must at least take on the burden of persuading the court that the hearing officer was wrong.'")(citation omitted); Roland M. v. Concord School Committee, 910 F.2d 983, 991 (1st Cir. 1990)("We keep in mind that, in cases arising under the [Education of the Handicapped Act], the burden rests with the complaining party to prove that the agency's decision was wrong.").  "Additionally, '[w]hen a party moves for summary judgment in [an IDEA case], he does not implicitly reserve a right to a trial if the motion is denied.'" Ms. H., 2011 WL 666033, **1-2 (citing Maricus W. ex rel. Marvin M. v. Lanett City Bd. of Educ., 141 F.Supp.2d 1064, 1069-70 (M.D.Ala. 2001)).

The Board's Contentions

The Board presents three grounds on which it seeks a judgment "that overturns, reverses and sets aside the Hearing Officer's Due Process Decision dated March 2, 2012" (Doc. # 43):

(1) "[t]he Hearing Officer erred in finding that the Board violated the child find provision" because, as a matter of law,  "the child find provision does not impose duties and obligations on the Board for which a parent can sue or seek relief, or for which the parent has a private cause of action"  (id., pp. 2-3, ¶ 1);

(2) assuming that "the [child find] provision imposes a duty and a private cause of action, the Hearing Officer erred in finding and concluding that the Board failed in the duty

5

or denied JY FAPE[,]" as "[t]he evidence below was overwhelming that JY did not have the 'red flags' or markers of a child with a disability, who, by reason thereof, required special education and related services" (id., p. 3, ¶ 2); and

(3)  "[t]he Hearing Officer erred in interpreting or construing the resolution session provision of the statute" and "erred in finding, based on this misconstruction, that the Board violated the resolution session provision and in finding that the actual resolution session that took place denied JY FAPE" (id., ¶ 3).[4]  The court addresses each of these challenges to the due process decision in turn.

# I

First, the Board alleges error in the hearing officer's "finding that the Board violated the child find provision."  (Doc. # 43, p. 2, ¶ 1).  The Board contends that "[a]s a matter or law and statutory interpretation the child find provision does not impose duties and obligations on the Board for which a parent can sue or seek relief, or for which the parent has a private cause of action."  (Id.).  It argues that the hearing officer erred in violation of the Spending Clause of the United States Constitution by allowing the Ys to proceed on a "child find" allegation, as the IDEA's "child find" provision – 20 U.S.C. § 1412(a)(3) – imposes no negligence-based or absolute duty and does not grant parents a private cause of action for its alleged breach, because there is no language within the "child find" provision itself so

---

[4]  See also Board's brief, Doc. # 45-1 at pp. 6-8 ("Summary of the Board's Position," restating "child find" and resolution session allegations of error).

stating.[5] (Doc. # 45-1, pp. 30-46; <u>id.</u>, pp. 35-36 (quoting the text of subsection (A) of the "child find" provision and arguing that this subsection says "NOTHING imposing some absolute duty or strict liability, or even a negligence based duty, on a School System that, for whatever reason, fails to identify and locate a child who happens to need special education" and "says NOTHING about parents of a child having a private right of action against a School System that, for whatever reason, does not happen to identify or locate their child as a child with a disability who need special education"); <u>id.</u>, pp. 37-38 (reiterating that §

---

[5]  The "child find" subsection of the IDEA provides, in pertinent part, that:

A state is eligible for assistance under this subchapter for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:

* * *

**(3) Child find**

**(A) In general**

All children with disabilities residing in the State ... regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

**(B)  Construction**

Nothing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in section 1401 of this title and who, by reason of that disability needs special education and related services is regarded as a child with a disability under this subchapter.

20 U.S.C. § 1412(a)(3).

1412(a)(3) "says NOTHING about a parent who claims that the School System failed to refer their child for a special education evaluation being able to sue or seek compensation[,]" "says NOTHING about a parent having a private cause of action[,]" and "says NOTHING about a duty being imposed or based on strict liability or on a negligence based model").[6]

Congress enacted the IDEA pursuant to the Spending Clause of the constitution, which grants Congress the power to lay and collect taxes "... To pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. CONST., Art. I, § 8, cl. 1 ("Spending Clause"); Arlington Central School District Board of Education v. Murphy, 548 U.S. 291, 297 (2006).

> [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.

Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981).

To address the Board's Spending Clause contention, the court must consider whether "a state official who is engaged in the process of deciding whether the State should accept IDEA funds" (Arlington, 548 U.S. at 296) would understand that his or her obligations include defending against and potential liability for a claim such as that lodged in the Ys'

---

[6] The Board points out that the "child find" provision of the Alabama Administrative Code (§ 290-8-9-.01(1)) also "does NOT give our hypothetical state officer clear notice of some strict liability or negligence based duty, nor of some private cause of action." (Doc. # 45-1, p. 39).

initial due process complaint. In that complaint, the Ys assert that, "[d]espite [JY's] diagnoses and his Parents' complaints to the School System ... about [JY's] behavior and academic struggles, the School System and its agents have failed to appropriately and timely evaluate [JY's] needs[.]" (May 2011 due process complaint, ¶ 6; see also id. at ¶ 10 ("Despite receiving federal financial assistance, the School System and its agents have failed to properly evaluate [JY] ... . The School System has refused to identify [JY] as a child with disabilities that is entitled to special education and related services."). In the decision before the court for review, the due process hearing officer finds "[t]hat, under the law, the [Board] failed to properly and timely respond to the parents' request for services for their child[,]" and "[t]hat the [Board] has denied the child a FAPE by failing to timely and properly evaluate him as required by law." (Id., p. 51). The Board's argument before this court rests on its contention that the due process complaint alleges, and the hearing officer found, that the Board violated 20 U.S.C. § 1412(a)(3)(A). However, the court – like the hearing officer – does not read the due process complaint to allege such a claim. Thus, the Board's first assignment of error is without merit.

While the hearing officer's analysis is unclear in some respects, his statement of the issues and his "Specific Findings" are not. Relating to the Board's Spending Clause argument, the hearing officer identifies the "specific issues under review and which are considered below" as "[w]hether or not the Respondent properly responded to the parents' various requests for services for their child even though the context of the parent referral made on or about November 1, 2010 was in the context of a request for Section 504

Services" and "[w]hether or not the Respondent's action *regarding the Parent's referral* resulted in a denial of a FAPE to the child ... ."  (Doc. # 36-1 at pp. 11-12, 33, 42)(emphasis added)[7]; see also id., at p. 42)("As there is no question that the Respondent *inappropriately responded to the 'referral' by the parents*, the question arises whether or not this constituted a denial of a FAPE for the child.")(emphasis added).  The hearing officer resolves these two issues with "Specific Findings" that the Board "failed to properly and timely respond *to the parents' request for services for their child*[,]" and "denied the child a FAPE by failing to timely and properly evaluate him as required by law."  (Id., p. 51)(emphasis added).[8]  It is true that, in summarizing his conclusions before making his "Specific Findings," the hearing officer states that the Board violated its "child find" obligation; earlier in the decision – *within* his discussion of the issue of whether the Board "properly responded to the parents'

_____

[7]  In their brief in support of their own motion for partial summary judgment, the plaintiffs assert that their due process complaint includes FAPE and "child find" claims. (Doc. # 42, p. 1). In their brief in response to the Board's motion, plaintiffs argue that a "child find" violation is independently actionable. (Doc. # 57).  However, plaintiffs assert that this court need not reach this issue because JY was denied a FAPE under other provisions of the IDEA and "[t]he Hearing Officer found that the Plaintiff Parents did make a referral, and the Board has not argued that they followed the proper steps following that referral." (Id., p. 4 n. 1). They further contend that "in the present case the student did not need to be sought out or found" because JY and his disability were known to the defendant agency and his parents had told the LEA that he was "struggling and in need of help." (Id., p. 8). The due process complaint does not cite the "child find" statutory provision or use this phrase, and it appears to express the Ys' dissatisfaction with the Board's response to their complaints and requests for services.  (See May 2011 due process complaint).  Regardless of how plaintiffs and the Board now characterize the due process complaint, the hearing officer's statement of the issues before him is a reasonable interpretation of the due process complaint.  Neither party has argued that the hearing officer erred by failing to include and enter a specific finding on an additional issue of whether the Board failed in its independent "child find" obligation imposed by § 1412(a)(3).

[8]  The hearing officer's specific findings correspond directly, and *seriatim*, to the four "specific issues under review" he identifies at the conclusion of Part III ("Issues Presented") of the decision. (See Doc. # 36-1, pp. 11-12 (issues) and pp. 51-52 (findings A through D)).

various requests for services ... "– he discusses the standard for finding a "child find" violation as to JY. (Id., pp. 34-36).  However, the hearing officer's statement of the "specific issues under review" and his "Specific Findings" demonstrate that he finds plaintiffs to be entitled to relief against the Board due to its violation of obligations set forth in § 1414 of the statute, *not* those in § 1412(a)(3)(A).  The former section provides, *inter alia*, that "a parent of a child ... may initiate a request for an initial evaluation to determine if the child is a child with a disability" and specifies the requirements for an initial evaluation and for the determination "of whether the child is a child with a disability[.]"  20 U.S.C. § 1414(a)(1), (b), (c).  The court understands the hearing officer to reason that – in the context of the facts known to school officials and the agency's independent "child find" obligation – the Board's agents should have treated the Ys discussions with the superintendent in late October 2010, and GY's e-mail stating that he and EY had decided to pursue a "504 plan" that would ensure JY's "rights to a free and appropriate public education[,]" as "initiat[ing] a request for an initial evaluation to determine if the child is a child with a disability" within the meaning of § 1414(a)(1)(B), and that their failure to do so violated the Board's obligations under § 1414. (See Doc. # 36-1, pp. 19-24, 33-43; Petitioner's Exhibit 10).[9]  Thus, the Board's Spending

---

[9] The Board notes that "the Alabama regulation in point" is subsection (1)("Child Find") of § 290-8-9-.01 of the Alabama Administrative Code and points out that it, "similar to the federal statutory provision, requires an LEA to develop and implement procedures" but does not "unambiguously state some absolute duty or some negligence based duty" nor does it "state that a parent can sue or seek redress for an alleged failure on the LEA[']s part." (Doc. # 45-1, p. 39). However, the hearing officer's written decision does not refer to subsection (1); instead, the hearing officer expressly cites and discusses subsection (6). (Doc. # 36-1, p. 37). The latter subsection is styled "Referral for Initial Evaluation" and provides, *inter alia*, that "[a] parent of a child ... may initiate a request for an initial evaluation[.]" Ala. Admin. Code, § 290-8-9-.01(6)(a)(Supp. No. 11-2). It further requires that an IEP Team review the referral and other information and determine "if the

Clause argument presents no basis for overturning the hearing officer's "Specific Findings" or the relief he orders as a result of those findings.[10] Thus, the due process decision survives

---

child will be evaluated for special education services" and, if the team decides against such an evaluation, that the agency give written notice to the parents. (Id., subsection (6)(e)). The hearing officer's citation to and discussion of the requirements of § 290-8-9-.01(6) indicates – like his statement of the issues and his "Specific Findings – that the relief he orders does not depend on a violation of the Board's "child find" obligation under 20 U.S.C. § 1412(a)(3) and § 290-8-9-.01(1) of the Alabama Administrative Code but, instead, on the Board's failure to treat the Ys' requests for assistance in their meetings with Superintendent Nichols and the November 2010 e-mail as a request for initial evaluation (i.e., a "referral"), and to proceed as required upon such a referral.

   [10]   The Board's Spending Clause argument fails even if the hearing officer's decision – despite his statement of the issues – is read to include a specific finding against the Board on a due process complaint allegation that the Board violated its "child find" obligation under § 1412(a)(3). The court may look beyond that discrete subsection to the statute as a whole to determine whether the IDEA unambiguously creates an actionable "child find" right. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). The "[p]rocedural safeguards" section of the IDEA requires that the state's procedures include "[a]n opportunity for any party to present a complaint ... with respect to any matter relating to the identification, evaluation, or education placement of the child, or the provision of a free appropriate public education to such child" (20 U.S.C. § 1415(b)(6)(A)(emphasis added)), and grants a party aggrieved by a due process hearing decision with respect to "a complaint presented pursuant to this section" the right to pursue a civil action in state or federal court (§ 1415(i)(2)(A)). See Compton Unified School District v. Addison, 598 F.3d 1181 (9th Cir. 2010)(rejecting school district's Spending Clause argument that "it did not have 'clear notice of the availability of an administrative hearing in 'child find' cases" because § 1415(b)(6)(A) clearly allows due process complaints relating to the identification of a child). And subsection (B)("Construction") of the "Child Find" provision itself suggests that the obligation imposed therein is not merely to implement policies and procedure (as the Board argues) but to identify each child with a disability needing special education. See § 1412(a)(3)(B)("Nothing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in section 1401 of this title and who, by reason of that disability, needs special education and related services is regarded as a child with a disability under this subchapter.")(emphases added). This construction of the IDEA is further reinforced by the structure of § 1412, the "[s]tate eligibility" provision; as to another of the "conditions" listed in § 1412(a) that might otherwise create an actionable private right – i.e., required qualifications for educational agency personnel and special education teachers to serve children with disabilities – Congress included language expressly excluding "a right of action on behalf of an individual student." 20 U.S.C. § 1412(a)(14)(E). Thus, the language and structure of the statute as a whole indicates that it contemplates a right of action on behalf of a child allegedly denied a FAPE due to an education agency's failure to comply with its "child find" obligation. See D.K. v. Abington School District, 696 F.3d 233 (3rd Cir.

the Board's first stated ground for reversal, and the court now turns to the second.

## II

The Board's second assignment of error, like its first, relates to its "child find" obligation.  The Board contends that "[a]ssuming the [child find] provision imposes a duty and a private cause of action, the Hearing Officer erred in finding and concluding that the Board failed in the duty or denied JY FAPE[,]" as "[t]he evidence below was overwhelming that JY did not have the 'red flags' or markers of a child with a disability, who, by reason thereof, required special education and related services." (Doc. # 43, p. 3, ¶ 2).  Within the section of its brief devoted to this argument, the Board objects to the admissibility of certain evidence; it contends that the hearing officer erred by relying on evidence of events that occurred outside the IDEA's two-year statute of limitations in concluding that the Board violated "child find" – specifically, EY's conversation during JY's 4th-grade year with Carol

---

2012)(school districts have a "child find" obligation to identify and evaluate "all students who are *reasonably suspected* of having a disability" and a failure to do so may constitute a procedural violation of the IDEA)(emphasis in original; citations omitted); Cf. Forest Grove School District v. T.A., 557 U.S. 230, 245 (2009)(in rejecting the school district's contention that § 1412(a)(10)(C), added by amendment to the IDEA, limited the remedies previously available under § 1415(i)(2)(C), noting that "[i]t would be particularly strange for the Act to provide a remedy, as all agree it does, when a school district offers a child inadequate special-education services but to leave parents without relief in the more egregious situation in which the school district unreasonably denies a child access to such services altogether."). While the court does not here rely on U.S. Department of Education regulations to support its conclusion that the statute itself gives the states clear notice of their exposure to a private cause of action for violating the "child find" obligation, the agency expressly treats "child find" violations as actionable by way of due process complaints on behalf of children enrolled in private schools by their parents.  See 34 C.F.R. § 300.140 (the due process complaint procedure does not apply to children enrolled by their parents in private schools, *except* as to "child find" complaints). Although this particular provision does not apply to JY, its express allowance of "child find" due process complaints on behalf of private school children clearly implies that the agency views "child find" violations as actionable on behalf of public school children as well.

Cunningham (then the Supervisor of Special Education Services and, by JYs' 7th-grade year, the Director of Exceptional Student Services) about whether JY qualified for services. (Doc. # 45-1, pp. 57-62; see hearing transcript at pp. 247-51, 440, 574, 734).

The court first addresses the evidentiary objection. The Board's contention that the hearing officer erred by considering evidence of the discussion between EY and Cunningham is without merit. Statutes of limitations operate only to bar *claims* that accrue outside the applicable limitations period; evidence that is relevant to establish claims that accrued within the limitations period is generally admissible.[11] The IDEA limitations provision cited by the Board does not state otherwise (see 20 U.S.C. § 1415(b)(6)(A)), and the Board points to no

---

[11] See, *e.g.,* Burton v. City of Belle Glade, 178 F.3d 1175, 1189 n. 11 (11th Cir. 1999)(§ 1983 vote dilution/equal protection case; district court's suggestion that evidence outside the limitations period would not be considered was erroneous but harmless, where the court *did*, in fact, consider the evidence); Williams v. City of Dothan, Ala., 745 F.2d 1406 (11th Cir. 1984)(concluding that district court erred in limiting discovery to events occurring several years before commencement of the limitations period, where historical evidence of city's contributions to past municipal improvement projects was relevant to the issue of discriminatory intent in municipal improvement tax assessments occurring during the limitations period); Downey v. Southern Natural Gas Co., 649 F.2d 302, 305 (5th Cir. 1981)("Although Downey's claims relating to the 1974 demotion and failure to transfer are time barred, these actions should be allowed as evidence on the question of whether Downey was constructively discharged.  We observe that '(w)hile some or most of this evidence may concern time-barred conduct, it is relevant, and may be used to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.")(quoting Crawford v. Western Elec. Co., Inc., 614 F.2d 1300, 1314 (5th Cir. 1980)); Fisher v. Procter & Gamble Mfg. Co., 613 F.2d 527, 540 (5th Cir. 1980)(stating that the district court's consideration of evidence of acts outside the statutory limitations period "as constituting the actionable wrongs upon which relief was based" would be improper, but finding no error where the "prior practices were considered relevant to show independently actionable conduct occurring within the statutory period"); U.S. v. Ashdown, 509 F.2d 793, 798 (5th Cir. 1975)(observing, in an appeal of a criminal conviction, that "[t]he statute of limitations is a defense to prosecution, not a rule of evidence"); Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1037-38 (2nd Cir. 1992)(finding error in district court's exclusion of evidence in a breach of contract action, because a statute of limitations does not bar the use of evidence "that predates the commencement of the limitations period but that is relevant to events during the period").

other statute or regulation – either in the motion *in limine* it presented to the hearing officer or its argument before this court – indicating that the limitations provision of the IDEA operates to exclude *evidence* as time-barred.  While the pertinent federal agency regulation limits the subject matter of the due process hearing to "issues" raised in a due process complaint, and limits due process complaints to claims that accrued within the two-year limitations period, the regulation does not proscribe the consideration of relevant evidence. See 34 C.F.R. § 300.511(d), (e).  The pertinent state administrative code section provides that the "[t]he hearing officer may stop unnecessarily hostile or *irrelevant* pursuits in questioning" but does not otherwise address the exclusion or admission of evidence.  Ala. Admin. Code § 290-8-9.08(9)(c) (12)(iii)(V)(emphasis added).  In this case, the hearing officer ruled that he would allow evidence from outside the two-year limitations period only if it is "probative as to the question that we're here for those two years."  (Hearing transcript, p. 18; see id., pp. 5-19).[12,13] The hearing officer did not err by considering evidence of the

---

[12] Counsel for the Board argues that "the Hearing Officer *violated his own ruling* regarding evidence of events occurring outside the 2-year statute of limitations period."  (Doc. # 45-1, p. 57)(emphasis added). He then represents that "[t]he Hearing Officer *ruled* that he would 'allow information that comes in before then **only relative to sort of historical background,** maybe.  Not necessarily evidence of a denial of FAPE. More as historical sort of background that sets the precedent for the two years that we're talking about, specifically during the hearing.'" (Id. quoting due process hearing transcript, pp. 9-10)(emphasis in italics added; bold type in original). However, the hearing officer made the statement quoted above in the beginning stages of oral argument on the Board's motion *in limine,* describing his routine position which – at that point – he saw no reason to change.  (See hearing transcript, pp. 9-10)("Well, my position routinely has been – and I don't see any reason to change that right now – is that I will allow information that comes in before then only relative to sort of historical background, maybe. Not necessarily evidence of a denial of FAPE. More as historical sort of background that sets the precedent for the two years that we're talking about, specifically during the hearing."). However, the hearing transcript reveals that the hearing officer was persuaded thereafter to rule against the Board on its motion *in limine*, to the extent that evidence of events preceding the statutory limitations period was probative on the issue of whether

EY-Cunningham discussion that occurred outside the two-year limitations period.

The Board summarizes its substantive contention on its second ground for challenge

as follows:

> JY is a child of average intelligence who is making progress in a magnet
> school that emphasizes math, science and technology, despite his ADHD and
> his parents' decision not to use medication.  The evidence at trial was clear and
> overwhelming that sufficient "red flags" suggesting the need for a special
> education referral and evaluation did not exist.

(Doc. # 45-1, pp. 46-47; see also id., pp. 47-56 (summarizing testimony from school

personnel to the effect that JY did not exhibit "red flags" that would warrant referring him

for a special education evaluation).[14]  However, contrary to the Board's suggestion, and as

_____

the Board violated the IDEA during that two-year period; the hearing officer indicated that he would
review the evidence on a "piece-by-piece" basis and would admit only such probative evidence.  Id.,
pp. 9-19. The pages on which the hearing officer's actual ruling is found are missing from the
hearing transcript the Board filed in this court. (See Doc. # 43-12, pp. 4-5)(omitting pages 17-21 of
the transcript). However, the missing pages are included within Plaintiff's Exhibit 42. (Doc. # 51-8,
pp. 17-21). Thus – contrary to the Board's argument – the hearing officer did not "violate[] his own
ruling." (Doc. # 45-1, p. 57).

[13] The Board's contention that evidence of EY's discussion with Cunningham is not relevant
simply rehashes its statute of limitations argument – i.e., the Board contends that the evidence is not
relevant or material because it is time-barred by the IDEA's limitations period.  (See Doc. # 45-1
at pp. 57-62; id. at 60-61 ("Event [sic] occurring outside the 2 year period would be neither material
(offered to go towards or help establish an element of the claim or violation) nor relevant (tending
to prove or disprove the alleged the [sic] claim or violation) to proving the alleged violation.").

[14] The Board points to the Ys' decision to discontinue JY's ADHD medication as if it should
weigh in the Board's favor on its IDEA claim. (Doc. # 46-1, p. 11, ¶ 4; p. 46). However, while
ADHD was diagnosed initially as the cause of JY's difficulties with attention, neuropsychologist
Passler's evaluation in June and July 2011 indicated that JY's attention problems are not caused by
ADHD, and that medication for treating the "organic" processing disorder of ADHD would not be
effective for JY. (Passler report and due process testimony; see also EY testimony at pp. 738-39).
Additionally, the IDEA expressly precludes an educational agency from requiring that a child obtain
a prescription for a controlled substance as a condition of receiving an evaluation or services.  20
U.S.C. § 1412(a)(25).

discussed at length above, the hearing officer's findings go to the agency's response *to the Ys' request for services*. The hearing officer concludes that the Board failed to respond properly to the "parents' request for services for their child[,]" and his associated FAPE finding resolves the specified issue of "[w]hether or not the [Board's] action *regarding the Parent's referral* resulted in a denial of a FAPE to the child ..." (Doc. # 36-1, pp. 11-12, p. 51 (findings A and B))(emphasis added).[15] In its argument before this court, the Board focuses entirely on whether JY's academic record and performance gave rise to a duty *on the part of the Board to initiate* a special education referral; it does not present any challenge at all to the hearing officer's *actual* findings regarding the Board's response to the parents' referral.[16] Thus, the Board's second asserted ground for overturning the hearing officer's

---

[15]  The education agency's obligations upon a parent's initiation of a request for evaluation do not depend on whether agency employees would themselves have thought a referral for evaluation to be warranted. See 20 U.S.C. § 1414(a)(1)(B) and (C); § 1414(b).

[16]  Based on the Board's statement of facts, the court expected that the Board might challenge the hearing officer's findings on the ground that the statements the Ys made to Superintendent Nichols during their meetings with him did not constitute a proper initiation of a request for evaluation.  (See Board's brief, Doc. # 45-1 at pp. 13-14, 25-29 (¶¶ 11-14, 52-65). However, it did not do so. (See Doc. # 43, pp. 2-3; Doc. # 45-1, pp. 30-70).  The court declines to derive, and then consider – from its own interpretation of the "statement of facts" – a legal theory on behalf of the Board that it did not itself choose to raise, particularly since the Board's statement of facts omits the evidence of record that supports the hearing officer's findings. To the extent that the Board's footnote 5 – buried within its Spending Clause argument – raises the issue (see Doc. # 45-1, p. 45 n. 5), the court is satisfied from its own examination of the record that the hearing officer's findings in this regard are well-supported by the evidence, including, notably, Superintendent Nichols' account of his discussion with the Ys. (See hearing transcript at pp. 381-405). In response to a question about whether either parent, during their meeting with him, asked "for special education services," Nichols replied, "I don't recall.  I just – I know it was clear to them that I was going to give them to Mrs. Cunningham. As far as looking at what proper procedures would be taken, whether or not he would even, you know, come close to qualifying with the criteria that we have in place for determining that.  She would contact the principal, possibly the teachers. So that was, you know, you know, where I kind of left *that part of the process with referring*." (Id., p. 398)(emphasis added). Counsel for the Board then inquired, "Yes, sir. I am just asking: Did they, *out of their mouths*, ask

decision also fails.

III

The final assertion of error raised by the Board goes to the hearing officer's finding regarding the Ys "resolution session" complaint – *i.e.*, that the Board "did not comply with the law when the Resolution meeting was convened and in that instance also denied the child a FAPE." (Doc. # 36-1, pp. 51-52 (Finding D)). The Board contends that "[t]he Hearing Officer erred in interpreting or construing the resolution session provision of the statute" and "in finding, based on this misconstruction, that the Board violated the resolution session provision and in finding that the actual resolution session that took place denied JY FAPE" (Doc. # 43, p. 3, ¶ 3).

The IDEA requires that, unless the parties agree otherwise, the local education agency must convene a resolution meeting within fifteen days of receiving a due process complaint, during which "the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint[.]"  20 U.S.C. § 1415(f)(1)(B)(i).  The statute requires relevant IEP

---

for special education services?" (Id., emphasis added). Nichols responded, again, that he did not recall. (Id.). He further testified that he spoke with Cunningham thereafter, "[j]ust telling her what the parent had shared with me.  And, you know, that *we needed to look at additional remedies on how to resolve this issue.  And whatever procedural steps that were appropriate, to put those in place as to whether or not he would qualify either under 504 or IDEA*." (Id., pp. 403-05)(emphasis added). Thus, whatever words the Ys actually uttered, Superintendent Nichols' testimony demonstrates that he understood those words as a parent "referral" for evaluation to determine whether JY qualified for services under either section 504 or the IDEA. The hearing officer did not err in concluding that the Board's agents failed to respond to this referral properly, even though GY's e-mail to the Principal Meigs was framed in terms of ensuring a FAPE for JY by way of a 504 plan.

18

team members and "a representative of the agency who has decisionmaking authority on behalf of such agency" to attend the session.  Id.

On May 31, 2011, after plaintiffs filed their first due process complaint, Sam Nichols (Superintendent of the Dothan City Schools at that time) and Carol Cunningham (Director of Exceptional Student Services), along with other Board employees, attended a resolution meeting with the Ys. (Hearing transcript at pp. 247, 380-81, 390, 415-18, 2306; Plaintiffs' Exhibit 1, May 2011 due process complaint; Petitioner's Exhibit 12).  Cunningham testified that, at the meeting, she advised the parents that "we would begin the referral process for special education" and, if JY were found to be eligible, would proceed according to an appropriate plan developed by the 504 team or IEP team.  (Hearing transcript, pp. 431-32). As to the Ys' request for an "immediate outside independent education evaluation[,]" Cunningham told them that "we would provide an evaluation by Dr. Michael Passler at the expense of Dothan City Schools per Board approval[,]" *i.e.*, if approved by the Board.  (Id., pp. 431-36).[17] Cunningham advised the Ys that "we would provide a speech and language evaluation by Dothan City Schools personnel."  Id., p. 436.  Mr. Y, however, mentioned that he would prefer to use someone other than Ms. Groover, a Board employee who does speech

---

[17]  While the phrased used by Cunningham initially – "per Board approval" – could be understood otherwise, Cunningham then testified as follows:

> Q.  So you told them that you would let Dr. Passler do the evaluation at the schools' expense if the Board approves it?
>
> A.  Yes.

(Hearing transcript., p. 436).

and language pathology testing; Cunningham responded that she "would get him a list of names that had the same credentials that he expected." (Id., pp. 437-38). Cunningham testified that she told the Ys "several things that we would do, but there were a couple of things that were on there that were pending Board approval." (Id., p. 541). She further testified that she did not do even those things that she told the Ys she "would" do because she "never heard back from the resolution meeting" after she "turned over what we did of to the resolution meeting" to Mr. Walding, the Board's attorney. (Id., pp. 541-43). Responding to a question about whether he attended the meeting "as the person to make a decision as to what could and couldn't be done for [JY]," Nichols testified that he was there "to listen to what Ms. Cunningham was saying and those – all that were participating. Certainly, I could have had a part in trying to resolve the issue." (Id. pp. 391-92). He said that "[f]inal authority is with the Board as far as whether or not it could be resolved[,]" and that no Board member attended the meeting. (Id., pp. 390-93).

After Cunningham and Nichols testified at the due process hearing, plaintiffs filed a second due process complaint regarding the Board's failure to include a representative with decision-making authority in the resolution meeting. (Plaintiff's Exhibit 2, October 2011 due process complaint). The same hearing officer was appointed to conduct a hearing on the second due process complaint; after allowing the parties an opportunity to object, he consolidated it with the ongoing hearing. (Hearing transcript, pp. 1464-68, 1990-2009). In his written decision, the hearing officer framed the issue as "[w]hether or not the resolution meeting called for under the law actually occurred as required under law since the persons

present on behalf of the Respondent school (the local educational agency, LEA) did not have 'decision making authority'?" (Doc. # 36-1, p. 12; see also id., at p. 45). He resolved this issue against the Board, concluding – based on the testimony of Nichols and Cunningham – that the Board failed to comply with the statute, as the Board representatives who attended the meeting did not have decision making authority. (Id., pp. 45-49). He found "[t]hat the Respondent did not comply with the law when the Resolution meeting was convened and in that instance also denied the child a FAPE." (Id., pp. 51-52).

In this court, the Board contends that there was no violation of the statute as to the resolution session because: (1) the statute cannot be understood to mean that a quorum of the Board or the full Board must attend the resolution meeting; and (2) even assuming that the statute does include this requirement, no agreement was reached, committed to writing, and signed and, therefore, there was no substantive violation. (Doc. # 45-1, pp. 62-63). The Board argues that the statute requires that the LEA representative have only "decision making authority" as opposed to "final" or "absolute" decision making authority. (Id., p. 66).[18] It suggests that the "Superintendent or some other administrator could attend the

---

[18]  As to the resolution session, the statute provides as follows:

(B) Resolution session

    (i) Preliminary meeting

    Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint--

        **(I)** within 15 days of receiving notice of the parents' complaint;

        **(II)** which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;

Resolution Session preliminary meeting [and] ... fits the term 'representative of the agency who has decisionmaking authority[,]'" and that, "if an agreement is actually reached, the Board could ratify or approve the agreement" subsequently and "authorize the Superintendent to execute the written agreement" within the remaining fifteen days of the thirty-day period prescribed by the statute between the complaint and the hearing "and/or the

---

> **(III)** which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
>
> **(IV)** where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint,
>
>> unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).
>
> (ii) Hearing
>
> If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence.
>
> (iii) Written settlement agreement
>
> In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is--
>
>> **(I)** signed by both the parent and a representative of the agency who has the authority to bind such agency; and
>>
>> **(II)** enforceable in any State court of competent jurisdiction or in a district court of the United States.
>
> (iv) Review period
>
> If the parties execute an agreement pursuant to clause (iii), a party may void such agreement within 3 business days of the agreement's execution.

20 U.S.C. § 1415(f)(1)(B).

3 business day review period." (Id., p. 67).[19]  The Board further contends that the evidence

is clear that the parties reached no agreement at the meeting, and "[w]ithout a signed, written

agreement, that was not voided within the 3 business days, there was no settlement

agreement and thus no substantive violation of FAPE came about because supposedly the

Board didn't obey the agreement." It maintains that "[j]ust as contemplated by the statute the

Ys were able to go forward with a hearing on their due process complaint after no signed

written agreement was reached within 30 days." (Id., pp. 68, 69).[20]

Plaintiffs reject the Board's interpretation of the statute.  They note that "[t]here is

nothing that says that the LEA cannot delegate the decision making authority" and, also, that

"[i]f the person with the decision making authority is not the one who can make a decision

as to settlement, there is no reason for a decision maker to be present at the session."

(Doc. # 57, p. 18).  Plaintiffs argue that the Board is asking this court "to rewrite ... § 1415,

to allow the LEA time, after the initial meeting, to seek out the decision maker and decide

whether the matter will settle." (Id.).

The court's analysis of the plain language of the statute leads to an interpretation that

lies between that suggested by the opposing parties.  As the Board argues, the statute does

not specify or require that the LEA representative at the resolution meeting have "final" or

---

[19]  The "3 business day review period" to which defendant refers does not come into play
until *after* an agreement is executed by the parties.  20 U.S.C. § 1415(f)(1)(B)(iv).

[20]  In its initial "Statement of the Case," the Board mentions its motion *in limine* as to the
resolution session, and its statement opposing consolidation of the hearing on the resolution session
due process complaint with the ongoing hearing, as well as the hearing officer's rulings against the
Board on both issues. (Doc. # 45-1, pp. 4-5). However, it does not argue that either of these rulings
constitutes a basis for overturning the hearing decision. (See id., pp. 62-70).

"absolute" authority over settlement of a complaint.  (See Doc. # 45-1 at p. 66).  This is clear

from the statute's provision allowing either party to void – within three business days of its

execution by "a representative of the agency who has the authority to bind such agency" –

a written settlement resulting from the resolution meeting.  20 U.S.C. § 1415(f)(1)(B)(iii) and

(iv)).  However, the statute explicitly requires the attendance of an  LEA representative with

"decisionmaking authority on behalf of such agency[.]" Id., § 1415(f)(1)(B)(i)(II). The Board

claims that the "Superintendent or some other administrator ... fits the term 'representative

of the agency who has decision making authority[,]" but the Board does not explain how this

is so, if – as the Board suggests immediately thereafter – the Board's "state law duty to

administer and manage the schools" requires that the Board ratify or approve any settlement

reached at the meeting and, thereafter, to "authorize the Superintendent to execute the written

agreement." (Doc. # 45-1, p. 67)(citing Ala. Code, § 16-11-9).[21] The Superintendent or some

other administrator satisfies the statutory requirement only *if* he or she, in fact, *has* the

authority – by express delegation or otherwise – to make the decision about what the LEA

will or will not do to resolve the issues presented in the IDEA complaint. The statute clearly

contemplates the resolution session as just that – a meeting at which the LEA and the

complainant(s) *can* reach a resolution because those with the authority to decide are

participants. See 20 U.S.C. § 1415(f)(1)(B)(iii)("In the case that a resolution is reached to

---

[21]  As the Board notes in its Spending Clause argument, the Supreme  Court has "'stated time
and again that courts must presume that a legislature says in a statute what it means and means in
a statute what it says there.'" (Doc. # 45-1 at p. 32)(quoting Arlington Central School District Board
of Education v. Murphy 548 U.S. 291, 296 (2006)).

resolve the complaint *at a meeting* described in clause (i), the parties *shall execute* a legally binding agreement ... .")(emphasis added); cf. H.C. ex rel. L.C. v. Colton-Pierrepont Central School District, 341 F. App'x. 687, 690-91 (2nd Cir. 2009)(remanding to the district court to determine whether it had jurisdiction to enforce an IDEA settlement agreement where neither party asserted that the agreement "emerged 'through the mediation process' or 'at' a 'resolution meeting'"). The Board has not demonstrated that either Nichols or Cunningham had the 'decisionmaking authority' required by the statute, and its argument before this court, as well as the due process hearing testimony of Nichols and Cunningham, suggests that they did not.[22,23] Thus, the court finds no basis for departing from the hearing officer's finding "[t]hat the [Board] did not comply with the law when the Resolution meeting was convened[.]" (Doc. # 36-1, pp. 51-52).

However, as the hearing officer noted (id., pp. 49-50), he could find that a child was denied a FAPE due to a procedural violation only if that procedural inadequacy actually

---

[22] The court does not here conclude that the entire Board or a quorum of the Board must attend an IDEA complaint resolution session to comply with the law. Whether that is required by the plain language of the statute depends on whether or not the Board chooses to grant "decisionmaking authority" to resolve an IDEA due process complaint to an agency representative

[23] Cunningham's hearing testimony, set forth above, makes clear that she did not have the "decisionmaking authority" required by the statute. Nichols' testimony on this point is vague. While his testimony that "[f]inal authority is with the Board as far as whether or not it would be resolved" is not dispositive, in view of the three-day withdrawal window allowed by the statute, Nichols gave no direct response to the question about whether he attended the session "as the person to make a decision as to what could and couldn't be done for [JY.]" See Hearing transcript, pp. 391-92 (he was there to listen to what the participants said and "could have had a part in trying to resolve the issues"). The Board, which bears the burden of persuading the court that the hearing officer's finding was erroneous, points to no evidence demonstrating that Nichols had the "decisionmaking authority" required by the statute.

caused a deprivation of educational benefits, impeded the child's right to a FAPE, or significantly impeded the parents' opportunity to participate in the FAPE decision-making process as to their child.  20 U.S.C. § 1415(f)(3)(E)(ii).  "In evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect *per se*."  Weiss by Weiss v. School Board of Hillsborough County, 141 F.3d 990, 994 (11th Cir. 1998).

Here, the court is unable to discern how the hearing officer reached his conclusion that the Board's failure to include an LEA representative with decisionmaking authority in the resolution session denied JY a FAPE. He does not analyze this component of his finding. (See Doc. # 36-1, pp. 45-49). His finding in this regard seems to assume, without an evidentiary basis for doing so, that the due process complaint would have been settled at the resolution session if a representative with decisionmaking authority had participated.  While it appears that Cunningham might have been inclined to resolve the complaint, if she had the authority to do so, the evidence of record does not support a finding that the Board necessarily (or even probably) would have chosen Cunningham as its decisionmaking representative.  Neither is there evidence to support a conclusion that some other LEA representative with decisionmaking authority would have agreed to a resolution at all. The court does not here condone the Board's failure to do what the law requires it to do, but it finds evidence of causation lacking. In short, any conclusion about what would have occurred had the Board sent a representative with decisionmaking authority to the resolution session is speculative. In the absence of evidence of what would have resulted from a

properly-constituted resolution meeting, there is no basis for concluding that this procedural violation caused a deprivation of educational benefits, impeded the JY's right to a FAPE, or significantly impeded his parents' opportunity to participate in the FAPE decision-making process.  See 20 U.S.C. § 1415(f)(3)(E)(ii).[24] Thus, the hearing officer's finding that the Board failed to comply with the IDEA's requirements for the resolution meeting is supported by the evidence and by the law, but his conclusion that this procedural violation denied JY a FAPE is not.[25] Accordingly, the court cannot agree with the hearing officer's finding "D" as to its FAPE conclusion.  (Doc. # 36-1, pp. 51-52).

## Conclusion

Except to the limited extent discussed immediately above, the Board has not met its burden of persuading the court that the hearing officer's findings, or the relief he ordered,[26] are contrary to law or the preponderance of the evidence.   Upon *de novo* review of the record of the administrative proceedings, and giving due weight to the findings of the hearing

---

[24] See also O.O. ex rel. Pabo v. District of Columbia, 573 F. Supp.2d 41, 48, 48 n. 5 (D.D.C. 2008)(finding no denial of FAPE in a case in which – even assuming no attendee had decisionmaking authority – there was no indication that a complaint would have been successful if the appropriate personnel had participated in the resolution meeting and the unproductive resolution session did not impact the due process hearing timeline).

[25] The IDEA does not leave complainants without a remedy for a procedural violation that does not deny a child a FAPE. Even for such violations, a hearing officer may "order[] a local educational agency to comply with procedural requirements under [§ 1415]." Id., § 1415(f)(3)(E)(iii).  While the hearing officer's final decision did not grant the Ys' request for such relief (see October 24, 2011 due process complaint, ¶ O), the Ys have not challenged that decision.

[26] While the court here disagrees with the hearing officer's FAPE conclusion as to the resolution session, none of the relief he ordered appears to relate solely to the resolution session finding.

officer, it is

ORDERED that the Board's motion for judgment in its favor on the record or, in the alternative, for summary judgment (Doc. # 43) is hereby GRANTED to the extent that the court rejects the hearing officer's finding that the Board's procedural violation of the IDEA as to the resolution session denied JY a FAPE, and DENIED in all other respects.

It is further

ORDERED that: (1) the court construes plaintiffs' motion for summary judgment (Doc. # 41), in part, to seek judgment in their favor as to the IDEA claim on the administrative record; and (2) the motion is GRANTED, except to the extent that the hearing officer found that the Board's violation of the IDEA's resolution session denied JY a FAPE.[27]

The court will enter judgment on the record as to the IDEA claim accordingly, and this claim will not proceed to trial.

DONE, this 31st day of March, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[27] The court will address the remainder of plaintiffs' motion for partial summary judgment (Doc. # 41) by separate order.